IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CSC HOLDINGS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-04-1101-M |
| ) | |
| 1.  SAM'S ELECTRONICS, INC., d/b/a LALA ) | |
|     DIGITAL; ) | |
| 2.  LA HOANG, a/k/a HOANG LA, individually ) | |
|     and d/b/a LALA DIGITAL; ) | |
| 3.  JOHN DOES NOS. 1-10; ) | |
| 4.  JANE DOES NOS. 1-10; ) | |
| 5.  UNIDENTIFIED CORPORATIONS NOS. ) | |
|     1-10; and ) | |
| 6.  UNIDENTIFIED BUSINESS ENTITIES NOS. ) | |
|     1-10, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Pending before the Court is Plaintiff CSC Holdings, Inc.'s ("Cablevision") Motion for Default Judgment. No response has been filed.

I.   Factual and Procedural Background

Cablevision is a national cable television system operator. Cablevision and its subsidiaries own and operate cable systems in New York, Connecticut, New Jersey, and Pennsylvania. Cablevision also owns certain cable television programming "originators," including American Movie Classics, the Independent Film Channel, and Womens' Entertainment.

Cablevision and its affiliates sell cable television services to their subscribers in the form of "packages" of programming services. Each of these packages includes a variety of programming options (i.e., channels). The pricing of the packages depends on the number of options included. Cablevision also sells premium and pay-per-view services to subscribers for an additional fee, which

varies depending on the particular premium services or pay-per-view options desired by the subscriber.

Cablevision's programming services are transmitted to subscribers in the form of electronic signals via a network of cable wiring and equipment. Each subscriber is provided with a "converter" to receive the electronic signals and translate them into viewable programming. To prevent subscribers from viewing channels (including channels that offer premium and pay-per-view services) for which they have not paid, Cablevision, like all cable service providers, "encodes" or "scrambles" the signals of the channels and services not included in the package purchased by the subscriber. When a subscriber wishes to purchase any such encoded or scrambled programming, Cablevision activates (from a central computer) a "decoder" or "descrambler" contained in the subscriber's converter.

Although Cablevision has the power to scramble and descramble its programming signals at will, it is possible to circumvent Cablevision's control over its programming through the use of "pirate" converter-decoders. Such decoders are used without Cablevision's authorization and in violation of the Cable Communications Policy Act of 1984 (the "Communications Act"), 47 U.S.C. §§ 553, 605, to descramble programming signals for which the user has not paid. Because the prices for premium and pay-per-view services can be substantial (from between $1.95 to $14.95 per month for premium services and $3.95 to $54.95 for each pay-per-view event), the financial loss attributable to the theft of cable programming services quickly adds up.

Defendant Sam's Electronics, Inc. ("Sam's Electronics"), doing business as LaLa Digital, is an Oklahoma corporation located in Oklahoma City. Both Sam's Electronics and La Hoang, one of the individual Defendants in the instant action, were named Defendants in *CSC Holdings, Inc.*

*v. White Star Electronics, Inc., et al.*, Case No. CIV-00-1499-M (W.D. Okla.). In that case, this Court was faced with facts and allegations substantially identical to those of this case. The parties settled the case shortly after the commencement of a hearing on Cablevision's motion for a preliminary injunction. The Court subsequently entered a Partial Consent Judgment upon the parties' request. The Partial Consent Judgment permanently enjoined Sam's Electronics and the other named Defendants from "selling, offering for sale, advertising for sale, distributing and/or transferring to customers residing in [Cablevision's] cable television franchise areas . . . any and all devices, pieces of equipment or components with the capability of descrambling cable television programming services . . . ." Partial Consent Judgment at 4, Pl.'s Ex. 1 from Damages Hr'g.

On September 3, 2004, Cablevision filed a Complaint and "Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction" against Sam's Electronics, La Hoang, also known as Hoang La, individually and doing business as LaLa Digital (collectively, "Defendants"), and John Does Nos. 1-10, Jane Does Nos. 1-10, Unidentified Corporations Nos. 1-10, and Unidentified Business Entities Nos. 1-10 (collectively, "Fictitious Defendants"). In its Complaint, Cablevision alleges that in spite of the permanent injunction entered in the *White Star* case, Defendants are again violating the Communications Act, 47 U.S.C. § 553(a)(1),[1] by selling and offering for sale "pirate" decoders intended for and capable of successfully descrambling all of Cablevision's electronic signals.[2]

---

[1] Section 553(a)(1) provides: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

[2] This action is centered around Cablevision's Communications Act claim, but it should be pointed out that Cablevision has listed a second cause of action in its Complaint, namely,

In relief, Cablevision requests in its Complaint a variety of statutory and equitable remedies. First, Cablevision seeks a declaratory judgment to the effect that

> defendants' unauthorized manufacture, modification, sale and/or distribution of "pirate" cable television descrambling equipment designed known or intended to decode plaintiff's cable television programming signals without plaintiff's authorization violated 47 U.S.C. section 553(a)(1) and that such violations were committed willfully and for purposes of defendants' direct or indirect commercial advantage and/or private financial gain.

Compl. at 10.  Second, Cablevision seeks permanent injunctive relief issued in accordance with 47 U.S.C. § 553(c)(2)(A)[3] "enjoin[ing] the defendants, their agents, servants, employees, affiliated business entities, assigns and those controlled directly or indirectly by any of them from the manufacture, modification, sale, distribution, advertisement for and/or use of electronic equipment designed for the unauthorized interception of cable television service." *Id.*  Third, Cablevision seeks an award of money damages under 47 U.S.C. § 553(c)(2)(B)[4] and (c)(3)(A),[5] to consist of *either*:

---

"imposition of constructive trust." The Court notes that a constructive trust is an equitable remedy, not a cause of action. *See Comcast of Ill. X, LLC v. Hightech Elecs., Inc.*, No. 03 C 3231, 2004 WL 1718522, at *8 (N.D. Ill. July 29, 2004) ("[A] constructive trust is not a separate cause of action but rather an equitable remedy.").

[3]    Section 553(c)(2)(A) provides: "The court may – (A) grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1) of this section . . . ."  47 U.S.C. § 553(c)(2)(A).

[4]    Section 553(c)(2)(B) provides: "The court may – (B) award damages as described in paragraph (3) . . . ."  47 U.S.C. § 553(c)(2)(B).

[5]    Section 553(c)(3)(A) provides: "Damages awarded by any court under this section shall be computed in accordance with either of the following clauses:

> (i)    the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be

Cablevision's "actual damages," "together with any additional profits earned by defendants as a result of defendants' unauthorized manufacture, modification, sale and/or distribution of 'pirate' cable television descrambling devices," *id.* at 11; or, alternatively, "statutory damages . . . for all of defendants' prohibited 'pirate' descrambling devices sold and/or distributed by the defendants in violation of 47 U.S.C. section 553(a)(1)," *id.*; and, regardless of whether actual or statutory damages are awarded, an additional award of "statutory enhanced damages" under 47 U.S.C. § 553(c)(3)(B).[6] Fourth, Cablevision seeks an accounting, in accordance with 47 U.S.C. § 553(c)(3)(A)(i),[7] of "all profits and expenses realized by defendants in violation of the foregoing statutes, together with defendants' production of all records reflecting sales of their 'pirate' descrambling devices." *Id.* Fifth, Cablevision seeks a constructive trust consisting of "the full value of services converted by virtue of defendants' 'pirate' cable television descrambling device sales operation." *Id.* Sixth, Cablevision seeks, in accordance with 47 U.S.C. § 553(c)(2)(A),[8] a transfer of ownership from defendants to Cablevision of all "descrambling devices, invoices, business records and other tools

---

required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or

(ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

47 U.S.C. § 553(c)(3)(A)(i), (ii).

[6] Section 553(c)(3)(B) provides: "In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000." 47 U.S.C. § 553(c)(3)(B).

[7] *See supra* note 5 for the text of this section.

[8] *See supra* note 3 for the text of this section.

of their illegal business." *Id.* Seventh, and finally, Cablevision seeks an award of costs, attorneys' fees, and investigative expenses in accordance with 47 U.S.C. § 553(c)(2)(C).[9]

On September 14, 2004, the Court issued an Ex Parte Temporary Restraining Order ("TRO") against Defendants. The TRO enjoined Defendants from selling, transferring, or otherwise distributing decoder devices and from altering or destroying their business records; provided for a freeze of Defendants' business and personal assets; directed Defendants to identify all asset accounts and safe deposit boxes and to provide Cablevision with an accounting of all purchases and sales of decoder devices since January 1, 2000; granted Cablevision expedited discovery; and ordered the U.S. Marshal to seize Defendants' business records, equipment, and decoder devices. On October 6, 2004, the Court held a hearing on Cablevision's motion for preliminary injunction. During the hearing, Defendants' counsel, S. Louis Little, stated that his clients had no objection to the Court converting the TRO to a preliminary injunction. On October 7, 2004, the Court issued the requested preliminary injunction.

The Court held a status and scheduling conference in this action on December 1, 2004. There, Mr. Little represented that he had been unable to communicate with his clients and was therefore unable to defend against Cablevision's claims.[10] The next day, Cablevision filed its "Request to Clerk for Entry of Default" based on Defendants' failure to respond to Cablevision's

---

[9] Section 553(c)(2)(C) provides: "The court may – (C) direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2)(C).

[10] The Court permitted Mr. Little to withdraw as counsel for Defendants by order dated March 11, 2005.

Complaint. On December 15, 2004, the Clerk entered Defendants' default pursuant to Fed. R. Civ. P. 55(a). Cablevision filed its Motion for Default Judgment that same day.

On February 16, 2005, the Court issued an order in which it stated:

> A review of the case file reveals that Defendants have utterly failed to defend or otherwise participate in this litigation. They have not filed an answer or other response to CSC's Complaint, which was filed over five months ago.[11] Nor have they responded to CSC's Motion for Default Judgment, which was filed approximately two months ago.[12] It is plainly apparent to this Court (and it would have been apparent even without Mr. Little's acknowledgment of the fact) that Defendants have elected not to cooperate with their own counsel, the result being an inexcusable delay in the expeditious resolution of this action. Based on Defendants' willful disregard of their obligations to comply with the federal and local rules of civil procedure, the Court finds that a judgment by default in favor of CSC *appears* to be warranted under Fed. R. Civ. P. 55(b).

Feb. 16, 2005 Order at 2 (emphasis in original; additionally, footnotes 11 and 12 in the quotation above are designated footnotes 1 and 2 in the original). In the same order, the Court scheduled a damages hearing for March 1, 2005. On the date of the scheduled hearing, the Court issued an order upon Cablevision's application rescheduling the hearing for March 11, 2005 and directing Cablevision to serve Defendants and their counsel with copies of the order setting the new hearing date, Cablevision's Motion for Default Judgment, and the Court's February 16, 2005 order setting the initial hearing date, at least three days prior to the March 11, 2005 hearing. On March 8, 2005,

---

[11] CSC effected service of process on Defendants (through the United States Marshals Service) on September 15, 2004.

[12] The applicable deadlines for responding to the Complaint and Motion for Default Judgment have long past. *See* Fed. R. Civ. P. 12(a)(1)(A) ("[A] defendant shall serve an answer (A) within 20 days after being served with the summons and complaint . . . ."); LCvR7.2(e) ("Each party opposing a motion, application or objection shall file with the Clerk and serve upon all other parties a response within eighteen (18) days from the date the motion, application or objection was <u>filed</u>.").

Cablevision filed its "Notification to Court of Compliance with Court's March 1, 2005, Order to Deliver Documents to Defendants and Defendants' Counsel." Based on its review of the "Notification," the Court was satisfied that Defendants had received the written notice to which they were entitled under Fed. R. Civ. P. 55(b)(2), and the damages hearing was conducted as planned.

During the hearing, Cablevision presented evidence and argument in support of its Motion for Default Judgment and advised the Court that it seeks an award of statutory damages as opposed to actual damages, but no longer seeks either a constructive trust or an accounting. The Court took the matter under advisement, and now finds that default judgment should be entered in Cablevision's favor and against Defendants[13] as set out more fully below.

II.   Discussion

Federal Rule of Civil Procedure 55 governs default judgments. That rule provides, in pertinent part:

> (b) Judgment.  Judgment by default may be entered as follows:
>
> \*              \*              \*
>
> (2) By the Court.  In all other cases the party entitled to a judgment by default shall apply to the court therefor; . . . . If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.  If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such

---

[13]   Cablevision has not identified any of the Fictitious Defendants. Further, the Court finds that Cablevision can and should obtain complete relief from the named Defendants. Consequently, the Court finds that the Fictitious Defendants should be dismissed from this action without prejudice.

>  hearings or order such references as it deems necessary and proper .
>  . . .

Fed. R. Civ. P. 55(b)(2).

    A.    <u>Liability</u>

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true," *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983), and the defaulting party is presumed to have admitted liability. *Id.*; *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); *Beck v. Atlantic Contracting Co.*, 157 F.R.D. 61, 64 (D. Kan. 1994).

As explained in the Court's February 16, 2005 Order, Defendants are clearly in default. Consequently, they are presumed to have admitted liability as to the factual allegations in Cablevision's Complaint. The Court finds, therefore, that Defendants are liable for violating the Communications Act, 47 U.S.C. § 553(a)(1), through their unauthorized sale or other distribution of "pirate" cable television descrambling and decoding devices. The Court finds that these devices were intended for and are capable of successfully descrambling Cablevision's electronic cable programming signals, and that Defendants were at all times aware that the devices would be used for this purpose. The Court further finds that Defendants' violation of the Communications Act was willful, as Defendants were on notice of the wrongfulness of their continuing conduct by way of the *White Star* case, the Partial Consent Judgment from which strictly prohibited Sam's Electronics and La Hoang from engaging in the conduct that forms the basis for the instant action, and the Court finds that Defendants violated the Communications Act for purposes of commercial advantage, as they sold "pirate" decoder devices in the ordinary course of their business operations.

B.  Requested Remedies

Having resolved the issue of liability, the Court now considers Cablevision's requested remedies. The Court will examine each of the requested remedies, and Cablevision's entitlement thereto, in turn.

Cablevision first requests a declaratory judgment regarding Defendants' violation of the Communications Act. The Court finds that this relief is unquestionably warranted. Accordingly, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), the Court will issue the declaratory judgment requested by Cablevision.

Second, Cablevision requests the Court to permanently enjoin Defendants, Defendants' agents, servants, employees, and affiliated business entities and assigns, from the manufacture, modification, sale, distribution, advertisement for and/or use of electronic equipment designed for the unauthorized interception of cable television service. The Court is statutorily authorized to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of [the Communications Act]." 47 U.S.C. § 553(c)(2)(A). The Court finds that a permanent injunction is warranted in this case. The Court further finds that the permanent injunction specifically requested by Cablevision is appropriate. The Court will therefore issue a permanent injunction in substantially the same form as the one requested by Cablevision.

Third, Cablevision requests an award of statutory damages under 47 U.S.C. § 553(c)(2)(B) and (c)(3)(A), and statutory enhanced damages under 47 U.S.C. § 553(c)(3)(B). More specifically, Cablevision requests a statutory damages award of $10,000 and a statutory enhanced damages award of $50,000, the maximum amounts allowed for each under the Communications Act. Under §§ 553(c)(2)(B) and (c)(3)(A), Cablevision is entitled to "an award of statutory damages for all

violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii).  Under § 553(c)(3)(B), Cablevision is entitled to statutory enhanced damages in an amount not to exceed $50,000 because the Court has already found that Defendants' Communications Act violation "was committed willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B).

In determining an appropriate award of statutory and statutory enhanced damages in this action, the Court focuses on two factors.  First, the Court considers the egregious nature of Defendants' Communications Act violation, a violation committed *after* Defendants were specifically placed on notice of the wrongfulness of their actions through the *White Star* case, and after they were strictly and explicitly prohibited (by way of the Court's Partial Consent Judgment in the *White Star* case) from committing similar acts in the future.  The Court also considers the period of time during which Defendants are likely to have repeatedly violated the Communications Act.  Cablevision has presented the Court with no evidence that sets out a definitive time period for Defendants' Communications Act violations.  However, Cablevision has presented the Court with evidence suggesting that Defendants were violating the Communications Act since as early as February of 2003, approximately 17 months before Cablevision commenced the instant action, and potentially even earlier.  *See* Pl.'s Ex. 16 from Damages Hr'g (photocopy of a check written by Sam's Electronics for the purchase of "500 CFT"); Pl.'s Ex. 15 from Damages Hr'g (business records listing LaLa Digital's Internet sales of descrambling devices beginning on April 6, 2003).  In light of these factors, the Court finds that Cablevision is entitled both to the maximum statutory damages award of $10,000 and to the maximum statutory enhanced damages award of $50,000.  The Court further finds that these damages awards are sufficient to fully compensate Cablevision for its

losses and to deter Defendants from violating the Communications Act in the future. Accordingly, the Court will award Cablevision monetary damages in the amount of $60,000.

Fourth, Cablevision requests confirmation that it may retain possession of the property of Defendants that was seized pursuant to the Court's September 14, 2004 TRO. Cablevision specifically requests to retain possession of Defendants' "descrambling devices, invoices, business records and other tools of their illegal business." Compl. at 11.

The Court finds that Cablevision's fourth request for relief should be granted in part and denied in part. The Court finds that Defendants are not entitled to reacquire possession of the seized cable descrambling or decoding devices, as no legitimate purpose exists for such devices. The Court, however, finds that the remainder of Defendants' seized property should be returned. Cablevision has not persuaded this Court that it should be permitted to retain possession of Defendants' invoices, business records, and other "tools" of Defendants' business. The Court finds that these items, though related, directly or indirectly, to Defendants' unlawful conduct, are not illegal or unlawful unto themselves. Accordingly, the Court finds that Cablevision may retain copies of the seized documents for evidentiary purposes in the event, for example, that Defendants should violate the Court's permanent injunction, but that Cablevision must return all original documents and other property to Defendants within twenty (20) days from the date of this order.

Fifth, Cablevision requests an award of attorneys' fees, costs, and expenses under 47 U.S.C. § 553(c)(2)(C), which authorizes courts to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." In this connection, the Court notes that Cablevision has filed a separate Motion for Award of Attorneys' Fees, Investigation Expenses,

and Costs ("Motion for Attorneys' Fees"), in addition to a separate Bill of Costs.[14] In its Motion for Attorneys' Fees, Cablevision seeks an award of attorneys' fees in the amount of $35,556.50 and an award of expenses in the amount of $6,569.84.  In its Motion for Attorneys' Fees and its Bill of Costs, Cablevision seeks an award of costs in the amount of $3,089.27.  All of Defendants' requests (for attorneys' fees, expenses, and costs) are supported by detailed records listing the nature of the expenses and the time devoted by and the billing rates of the individuals involved.  The Court has carefully reviewed Cablevision's Motion for Attorneys' Fees, along with all of the attachments thereto, and now addresses the specific requests for attorneys' fees and expenses.

The Court first considers the amount of attorneys' fees requested.  Five attorneys billed time in this case: (1) Daniel J. Lefkowitz, a partner in the New York office of Lefkowitz, Louis, Sullivan and Hogan, L.L.P. ("LLS&H"), who billed 5.8 hours at an hourly rate of $240; (2) Wayne R. Louis, another attorney at LLS&H, who billed 41.7 hours at an hourly rate of $165 and 10.9 hours at an hourly rate of $200; (3) Patrick J. Sullivan, a third attorney at LLS&H, who billed 30.4 hours at an hourly rate of $165; (4) Frances E. Patton, a partner in the Oklahoma City office of Pierce Couch Hendrickson Baysinger & Green ("PCHB&G"), who billed 95 hours at an hourly rate of $165; and (5) Heidi M. Nichols, an associate at PCHB&G, who billed 25.4 hours at an hourly rate of $145.  Additionally, a legal assistant at PCHB&G billed 7.3 hours at an hourly rate of $100.  The Court notes that Mr. Lefkowitz's $240 hourly rate is somewhat steep by Oklahoma City standards, but is not unreasonable given Mr. Lefkowitz's experience.  The Court finds the remaining hourly billing rates are reasonable.

---

[14] Cablevision's request for costs was deemed withdrawn by counsel by virtue of the fact that the Bill of Costs was filed before default judgment had been entered.

The Court also finds the number of hours expended overall, and the number of hours expended by Cablevision's attorneys on particular tasks, are reasonable. This action involves statutory violations giving rise to significant and continuing losses to Cablevision. Due to the nature of the statutory violations here involved, Cablevision justifiably sought a temporary restraining order and a preliminary injunction, which required a hearing, and because of Defendants' failure to defend against Cablevision's claims, Cablevision justifiably sought a default judgment, which required a second hearing. The Court finds that the general complexity of this litigation and Cablevision's justifiable filing of numerous motions and its counsel's attendance at multiple hearings support the requested attorneys' fee award. Additionally, the Court points out that Cablevision has essentially obtained complete relief in this case. This factor weighs heavily in favor of a finding that Cablevision's attorneys' fee request is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."). In sum, the Court finds that Cablevision's requested attorneys' fee award of $35,556.50 is reasonable, and that Cablevision is entitled thereto.

The Court next considers Cablevision's requested expenses. Cablevision requests expenses incurred by three investigators in the course of "pre-suit surveillance, the court-ordered seizure, the Show Cause hearing, and the Default Judgment hearing." Mot. for Attorneys' Fees at 5. The investigators incurred expenses for meals, transportation, and lodging.

As a general matter, the Court finds that investigative expenses qualify as "full costs," as that term is used in the Communications Act, and that such expenses may properly be awarded to a party,

like Cablevision, that prevails on a claim arising under the Communications Act. *See Gen. Instrument Corp. of Del. v. Nu-Tek Elecs. & Mfg., Inc.*, 197 F.3d 83, 92 n.6 (3d Cir. 1999) (finding no abuse of discretion in district court's award of investigative expenses to prevailing party under the Communications Act); *see also, e.g., Time Warner Entm't/Advance-Newhouse P'ship v. Worldwide Elecs., L.C.*, 50 F. Supp. 2d 1288, 1302 (S.D. Fla. 1999) (finding, under the Communications Act, that "[f]ull costs may include, recovery of investigative costs"). Turning to the specific expenses incurred by Cablevision's investigators, the Court finds that all of the transportation and lodging expenses are reasonable and should be awarded. The Court, however, finds that some of the investigators' meal expenses are unreasonable. Joseph Flaim, for example, spent an average of $32.07 for dinner over the course of four days; Donald Kempton spent $28.58 for dinner on one occasion; and Frank Beyrodt spent $50.20 for dinner on one occasion. The Court finds that a $25 maximum charge per meal is reasonable, and that to the extent the investigators exceeded that amount, the expenses requested by Cablevision should be reduced. Accordingly, the Court finds that Cablevision is entitled to an award of investigative expenses in the amount of $6,512.21.

The Court declines to rule on Cablevision's request for costs, which should be pursued through the Court Clerk's Office in accordance with LCvR54.1.

Finally, Cablevision seeks prejudgment and postjudgment interest on its damages awards. The purpose of prejudgment interest is "to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of [the] judgment." *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1288 (10th Cir. 1998) (quoting *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1256 (10th Cir. 1988)). Although the Tenth Circuit has

recognized that prejudgment interest is "ordinarily awarded," the circuit has also emphasized that "prejudgment interest is not recoverable as a matter of right." *Id.* at 1288-89. To determine whether prejudgment interest should be awarded in any particular case, the district court must find that the award would "serve to compensate the wronged party. . . . If the court determines the award of interest would serve this purpose, the court must then determine whether the equities preclude such an award." *Id.* at 1289 (citation omitted).

The Court finds that prejudgment interest should not be awarded in the case at bar. In reaching this conclusion, the Court notes that Cablevision has not identified a date from which it believes prejudgment interest should begin being calculated. In view of this fact, and in view of the nature of Defendants' wrongful conduct, which cannot be linked to any definite starting date, any award of prejudgment interest in this case would necessarily require the Court to randomly select a start date for the calculation of interest. The Court is reluctant to do so, as selecting a date that is too far in the past may unfairly prejudice Defendants. Additionally, the Court finds that the monetary damages requested and now awarded are sufficient to fully compensate Cablevision for its losses; Cablevision has articulated no argument to the contrary. Accordingly, Cablevision's request for prejudgment interest is denied.

Under 28 U.S.C. § 1961(a), Cablevision is entitled to postjudgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment." 28 U.S.C. § 1961(a). In this instance, the relevant interest rate is 3.35% per diem from the date of judgment.

III.    Conclusion

For all of the foregoing reasons, the Court hereby GRANTS Cablevision's Motion for Default Judgment [docket no. 32] as follows:

(1)   The Court DECLARES that Defendants' unauthorized manufacture, modification, sale, and/or distribution of "pirate" cable television descrambling equipment designed, known, or intended to decode Cablevision's cable television programming signals without Cablevision's authorization violated 47 U.S.C. § 553(a)(1). Such violations were committed willfully and for purposes of Defendants' direct or indirect commercial advantage and/or private financial gain;

(2)   The Court ORDERS, ADJUDGES, and DECREES: That Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly by them or acting on their behalf or in concert with them, are hereby *permanently* enjoined and restrained from the sale, transfer, advertisement (including advertisement on the Internet or other on-line service), movement and/or offer for sale, modification, manufacture, storage and distribution of cable television decoding devices and related equipment and/or the rendering of any assistance whatsoever in the sale, transfer, advertisement, movement, modification, manufacture, storage or distribution of such equipment, with such equipment including but not limited to cable television decoders, converters (if modified so as to be capable of decoding scrambled cable transmissions or if connected to other decoding equipment described herein), descramblers, descrambling cubes or "programmers," converter-decoder combination units, digital cable filters, integrated circuits, quick boards, smart boards, test kits, chips, E proms and circuit boards;

(3)   The Court VACATES the preliminary injunction issued on October 7, 2004 [docket no. 20];

(4)   The Court AWARDS Cablevision statutory damages in the amount of $10,000;

(5)   The Court AWARDS Cablevision statutory enhanced damages in the amount of $50,000;

(6)   The Court ORDERS that Cablevision may retain and dispose of any and all "pirate" decoder or descrambler devices seized from Defendants, but FURTHER ORDERS Cablevision to deliver to Defendants all original documents and other property seized from Defendants within twenty (20) days from the date of this order;

(7)   The Court GRANTS IN PART and DENIES IN PART Cablevision's Motion for Award of Attorneys' Fees, Investigation Expenses, and Costs [docket no. 51] as follows:

  (a) The Court AWARDS Cablevision $35,556.50 in attorneys' fees;

  (b) The Court AWARDS Cablevision $6,512.21 in investigative expenses; and

  (c) The Court declines to award Cablevision's requested costs at this time in accordance with LCvR54.1.

(8) The Court DENIES Cablevision's request for prejudgment interest;

(9) The Court GRANTS Cablevision's request for postjudgment interest, which shall be calculated at the rate of 3.35% per diem from the date of judgment on $102,068.71;

(10) The Court ORDERS that judgment by default be entered against Defendants Sam's Electronics, Inc., doing business as LaLa Digital, and La Hoang, also known as Hoang La, individually and doing business as LaLa Digital, pursuant to Federal Rule of Civil Procedure 55(b)(2), in the total amount of $102,068.71, forthwith; and

(11) Finally, the Court DISMISSES Defendants John Does Nos. 1-10, Jane Does Nos. 1-10, Unidentified Corporations Nos. 1-10, and Unidentified Business Entities Nos. 1-10 without prejudice.

**IT IS SO ORDERED this 16th day of May, 2005.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE